UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIANA GEORGE,

                Plaintiff,

          V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                Defendant.

_____

**REPORT AND
RECOMMENDATION**

12-CV- 1610 (TJM/VEB)
(GTS/VEB)

## I. INTRODUCTION

In July of 2008, Plaintiff Diana George applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since June of 2008 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for benefits on July 7, 2008, alleging disability beginning on June 28, 2008. (T at 137, 141).[2]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on October 19, 2010, in Watertown, New York, before ALJ Barry E. Ryan.  (T at 32).  Plaintiff appeared with her attorney, who requested and received an adjournment. (T at 32-37).  The hearing was continued on March 22, 2011. (T at 38).  Plaintiff appeared with her attorney and testified. (T at 42-59).

On May 10, 2011 ALJ Ryan issued a decision denying Plaintiff's applications for benefits. (T at 7-31).  The ALJ's decision became the Commissioner's final decision on August 27, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on October 29, 2012. (Docket No. 1).  The Commissioner interposed an Answer on February 10, 2013. (Docket No. 7).  Plaintiff filed a supporting Brief on April 26, 2013. (Docket No. 12).  The Commissioner filed a Brief in opposition on June 6, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.      Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 28, 2008, and met the insured status requirements of the Social Security Act through December 31, 2012. (T at 13).   The ALJ found that Plaintiff's hypertension with migraine headaches and lower extremity edema were "severe" impairments under the Act. (T at 13-14).   However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15).

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift/carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk at least 4 hours in an 8-hour workday with normal breaks, sit 6 hours in an 8-hour workday, and occasionally climb, balance, stoop, and crouch. The ALJ also concluded that Plaintiff should avoid exposure to extreme heat. (T at 16-23).

The ALJ determined that Plaintiff could not perform her past relevant work as a cook, nurse's aide, or teacher's aide. (T at 23). However, considering Plaintiff's age (39 years old on the alleged onset date), education (high school), and RFC (outlined above), the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 23-24). As such, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from June 28, 2008 (the alleged onset date) through May 10, 2011 (the date of the ALJ's decision). (T at 24-25). As noted above, the ALJ's decision became the Commissioner's final decision on August 27, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments. First, Plaintiff contends that the ALJ did not afford proper weight to the opinions of her treating physicians and, thus, did not correctly assess her residual functional capacity. Second, she challenges the ALJ's credibility assessment. Third, Plaintiff contends that the ALJ erred by relying on the Medical-Vocational Grids at step five of the evaluation. Each argument will be addressed in turn.

### a.    Treating Physicians

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

On February 3, 2009, Dr. Jamie Hynd, Plaintiff's treating cardiovascular specialist, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Dr. Hynd noted that Plaintiff suffered from severe hypertension, with blood pressure spikes on any exertion. (T at 530). He opined that Plaintiff was limited to lifting/carrying 10 pounds occasionally; standing or walking for 2 hours in an 8-hour work day; and was limited with regard to pushing and pulling. (T at 529-30). Dr. Hynd reported that Plaintiff's ability to sit was not limited by her impairment. (T at 530).

In a note dated June 5, 2009, Dr. Hynd wrote that: Plaintiff had "been off work for severe hypertension since 6/09 and this condition continues, until further notice." (T at 533)(emphasis original). In a note dated October 27, 2009, Dr. Hynd again opined that Plaintiff could not work "until further notice." (T at 455).

On October 26, 2010, Dr. Manasvi Jaitly, Plaintiff's treating nephrologist, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Dr. Jaitly assessed that Plaintiff was limited to lifting/carrying 10 pounds occasionally; standing/walking at least 2 hours in an 8-hour workday (with frequent rest); and sitting for less than 6 hours in an 8-hour workday. (T at 558). Dr. Jaitly noted that Plaintiff's high blood

8

pressure had been "difficult to control." (T at 558).

The ALJ afforded "little weight" to the treating physicians' opinions. (T at 22). The ALJ's decision was not supported by substantial evidence and failed to give proper weight to the treating physicians' assessments. In explaining his decision, the ALJ made findings that, in effect, substituted his judgment for the physicians' medical opinions.

For example, in October 2009 Dr. Jaitly gave medical clearance for Plaintiff to undergo cataract surgery. (T at 458). The ALJ found that this clearance provided a reason for discounting Dr. Jaitly's assessment of Plaintiff's limitations. (T at 22). This is the sort of "circumstantial critique by [a] non-physician[]" that the Second Circuit has cautioned "must be overwhelmingly compelling in order to overcome a medical opinion." Wagner, 906 F.2d at 862. There is no medical authority for the correlation the ALJ draws between the two events. The cataract surgery was needed to address vision problems in Plaintiff's right eye. (T at 458). Dr. Jaitly's decision to clear Plaintiff for surgery represented his judgment that the risks of complications in surgery were outweighed by the anticipated benefits. There is no evidence to support the ALJ's conclusion that this risk/reward calculation suggests an ability to perform basic work activities on a sustained basis or otherwise undermines Dr. Jaitly's assessment of Plaintiff's limitations.

The ALJ concluded that the treating physicians' opinions were "not well-supported by their own scant clinical and laboratory findings." (T at 23). This assessment is not supported by the record. On April 18, 2008, Plaintiff's treating physician's assistant (Scott Beeles), transferred her to the emergency room directly from his examination based on her complaints of chest pain and dizziness. (T at 245-46). In September of 2008, Dr. Hynd wrote that Plaintiff continued to have problems with headaches and high blood pressure.

(T at 352). He indicated that Plaintiff's blood pressure was under control where she was under strict guidance and care in the hospital, but increased when she was in outpatient status. (T at 352). In October of 2008, Dr. Hynd reported that Plaintiff continued to have very high diastolic blood pressures over 120 despite medication. (T at 347). He noted that Plaintiff's blood pressure dropped significantly when she was hospitalized and questioned whether anxiety might be playing a role. (T at 347). In a December 2008 treatment note, Dr. Jaitly described Plaintiff's hypertension as "uncontrolled." (T at 393). In February of 2009, Dr. Jaitly opined that Plaintiff's hypertension was under "improved" control with medication, but was "still not optimal." (T at 440). Plaintiff had high blood pressure during a March 2009 office visit with Dr. Jaitly. (T at 441). In a July 2009 treatment note, Dr. Hynd reported that Plaintiff's blood pressure logs indicated consistent high blood pressure. (T at 432). In August of 2009, Dr. Jaitly opined that Plaintiff's blood pressures were "not adequately controlled" despite multiple anti-hypertensive medications and Plaintiff's compliance with treatment. (T at 491). In November of 2009, Mr. Beeles (the treating physician's assistant) opined that Plaintiff was not a candidate for work for the following 3-6 months due to uncontrolled hypertension. (T at 453). On November 13, 2009, Dr. Jaitly noted that Plaintiff had "uncontrolled and accelerated hypertension and blood pressure in the office today." (T at 495). In January of 2010, Plaintiff complained of family stress and high blood pressure was noted during an office visit with Dr. Jaitly. (T at 496). In March of 2010, Dr. Hynd noted continued high blood pressure despite an intensive treatment regimen and good compliance with treatment. (T at 477). He reported that Plaintiff was experiencing dizziness, which was a possible side effect of her medication. (T at 477).

The ALJ also cited Plaintiff's "limited course of treatment" as a reason for discounting

the treating physicians' opinions. (T at 23). First, this finding is inconsistent with the extensive treatment history and medication regimen described in the medical records and summarized above. Second, it is not proper to discount a treating physician's opinion simply because he or she has recommended or implemented a treatment plan the ALJ considers "conservative." See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen. The ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir.2000)).

The ALJ also referenced Plaintiff's "wide range of daily activities" as a reason for questioning the treating physicians' assessments. (T at 23). First, the "wide range" of activities referenced by the ALJ are, in fact, quite modest. Plaintiff reported that she can attend to her personal care needs, prepare meals with help from her husband, perform light dusting, separate laundry, sit on her porch, accompany someone to the grocery store, wash dishes, watch television, and socialize with friends and family. (T at 22). Second, there is good reason to believe Plaintiff's hypertensive symptoms (which are already considered by her treating physicians to be "uncontrolled") might be exacerbated if she was required to meet the demands of competitive, remunerative work on a sustained basis. As noted above, the treating physicians have observed a possible link between Plaintiff's symptoms and stress. (T at 347, 352, 496). Thus, it would stand to reason that Plaintiff's hypertensive

symptoms (which are already significant) would be aggravated by the stress demands of maintaining a regular work schedule. The ALJ does not appear to have accounted for this important consideration. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer. *The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases*." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)(emphasis added).

The ALJ relied on the opinions of two non-examining providers in support of his decision to discount the treating physicians' opinions. In April of 2011, Dr. Michael Falkove reviewed Plaintiff's medical records and completed Medical Interrogatories provided by the ALJ. Dr. Falkove recognized that Plaintiff's hypertension was "difficult to control." (T at 602). However, he opined that Plaintiff's impairments did not meet or equal any impairment in the Listings. (T at 603). Dr. Falkove further opined that Plaintiff retained the RFC to perform sedentary work, including lifting less than 10 pounds, standing/walking for 2 hours in an 8-hour day, and sitting for 6 hours in an 8-hour day. (T at 603-604, 606). The non-examining State Agency review consultant (identified as "Wakeley") made the same assessment of Plaintiff's RFC. (T at 414).

The ALJ reported that he "accepted" Dr. Falkove's opinion and gave "some weight" to the State Agency review consultant's opinion because of its consistently with Dr. Falkove's assessment. (T at 21). The ALJ explained his decision to give greater weight to the non-examining analysts by noting that they "had the benefit of reviewing medical

evidence from [Plaintiff's] various treating sources, while [the treating providers] were generally limited to their own findings and observations on exam." (T at 23). To the extent this was intended to express an opinion that the assessments of non-examining analysts are more reliable than those given by treating providers, this is directly contrary to the well-established authority, which requires significant deference to and respect for treating provider opinions. See Burgess, 537 F.3d at 128-29. To the extent that this was a comment on the non-examining analysts' possession of the "bigger picture," this is contrary to logic and reason, as each of the treating physicians' findings were founded on sound clinical findings and were not inconsistent with one another.

For the reasons outlined above, this Court finds that the ALJ's assessment of the treating physicians' opinions was not supported by substantial evidence and not rendered consistent with applicable law. These errors undermine the ALJ's conclusion that Plaintiff retained the RFC to perform the requirements of sedentary work on a sustained basis.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See, e.g., Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR

13

96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

14

> 7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She completed twelfth grade and underwent training to become a certified nurse's aide. (T at 43). She has severe edema in her legs, which prevents her from standing more than 10 minutes at a time. (T at 46). Her blood pressure is uncontrolled, even with an extensive medication regimen. (T at 46). She uses a cane to walk and has difficulty with balance. (T at 46). Prolonged sitting causes leg cramps. (T at 51). Her high blood pressure causes severe migraines, along with nausea and vomiting. (T at 51-52). Medication side effects include dizziness, racing heart rate, and headaches. (T at 56). Plaintiff has difficulty sleeping. (T at 56). She naps throughout the day. (T at 57). She performs light housework with help from her daughter and husband, (T at 57). She cannot lift more than 10 pounds because of chest pain. (T at 58). Sitting is limited to no more than 20 minutes at a time. (T at 58). She can stand for 5 to 10 minutes at a time. (T at 58).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (T at 18).

The ALJ's credibility determination was flawed. First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, the ALJ's errors with regard to the treating physicians' opinions (as outlined above) impacted his assessment of Plaintiff's credibility. The treating physicians supported Plaintiff's testimony concerning the limiting effect of her symptoms and further observed that those symptoms would likely be aggravated by an increase in stress.

The ALJ's decision to discount Plaintiff's credibility was thus not supported by substantial evidence.

### c. The Grid

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable

16

rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

The ALJ found that Plaintiff was not disabled pursuant to the framework of Medical-Vocational Rule 201.28. (T at 24). However, that finding was based on the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work. The RFC

determination was materially affected by the ALJ's decision to discount the treating physicians' opinions and Plaintiff's credibility. For the reasons outlined above, the ALJ's evaluations of the opinions and Plaintiff's subjective complaints were flawed.

### 3. Remand for Calculation of Benefits

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, this Court finds persuasive proof of disability. As outlined above, Plaintiff's treating physician and nephrologist both concluded that her uncontrolled hypertension would preclude her from performing the basic demands of work on a

18

sustained basis. (T at 455, 529-30, 533, 558). These findings were consistent with the contemporary treatment notes. No examining provider offered an opinion to the contrary. The ALJ's contrary conclusion was based on a flawed analysis of the treating physicians' opinions and an improper decision to give greater weight to the non-examining analysts. Accordingly, this Court finds that remand for further consideration would serve no productive purpose and recommends that this case be remanded for calculation of benefits.

## IV. CONCLUSION

This Court recommends that the Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: December 18, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge